IN THE UNITED STATES DISTRICT COURT
           FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

JOSE ANTONIO MORALES,            )
                                 )
              Plaintiff,         )
                                 )
         v.                      )      1:09CV175
                                 )
JOHN CHARLES HOLLY and CHARLES   )
BRIAN ESTES,                     )
                                 )
              Defendants.        )

                **MEMORANDUM OPINION AND ORDER**

     Plaintiff commenced this action by filing a pro se form Complaint pursuant to 42 U.S.C. § 1983 in which he seeks money damages from Defendants (whom Plaintiff identifies as a Captain and Sergeant, respectively, with the Lee County Sheriff's Office), due to an incident in which Plaintiff allegedly was shot. (Docket Entry 2 at 2-3.) The case comes before the Court on a number of motions: 1) three separate requests by Plaintiff for appointment of counsel (Docket Entries 15, 23 and 26); 2) Defendants' Motion to Obtain SBI Report (Docket Entry 17); 3) Defendants' Motion to Depose Incarcerated Witness (Docket Entry 18); 4) Plaintiff's Motion for an Extension of Time (Docket Entry 20), in which he seeks more time, inter alia, to file responses to Defendants' Motion to Obtain SBI Report and Defendants' Motion to Depose Incarcerated Witness (i.e., Plaintiff); 5) Defendants' Motion to Compel (Docket Entry 21); 6) Defendants' Motion to Extend the Discovery Period (Docket Entry 25); and 7) Defendants' Motion for Extension of Time to File Their Motion for Summary Judgment (Docket

Entry 29). For the reasons that follow, the Court will deny Plaintiff's motions seeking appointment of counsel, will grant Defendants' motions to compel, to extend the time for Defendants' to conduct discovery, and to file dispositive motions, and will grant Plaintiff's motion seeking more time to respond to Defendants' motions regarding the SBI report and his deposition (and therefore will defer ruling on those motions by Defendants).

## BACKGROUND

Plaintiff filed this action on March 10, 2009. (Docket Entry 2.) At that time, Plaintiff listed as his address the Alamance County Detention Center in Graham, North Carolina. (Id. at 2.) In his Statement of Claim, contrary to the directions on the complaint form, Plaintiff did not "[i]nclude relevant times, dates, and places" (id. at 3); instead, the entirety of Plaintiff's factual allegations appear as follows:

> As soon as I exited the car through the window because my door wouldn't open I heard someone say don't you run you little motherfucker. I'm going to kill you but <u>I ran away from Captain Holly</u> unarmed. But he opened fire on me immediately. When I crossed the road behind the house I stopped running and put my hands up. Then I heard a loud boom and I was shot in my face. Sgt Estes also took blame for shooting me to [sic]. <u>I heard a lot of gun shots whiles [sic] I was running</u>. I have a lot more to say right now Im [sic] briefly breakin [sic] this down[.]

(Id. (emphasis added).)

The Court engaged in a lengthy effort to secure Plaintiff's compliance with the requirements for proceeding in forma pauperis before summonses were issued and were served upon Defendants. (Docket Entries 3-12.) During the course of these exchanges

regarding in forma pauperis status, on May 22, 2009, the Court received from Plaintiff a document indicating that his address had changed to Polk Correctional Institution in Butner, North Carolina; the Court promptly began using that address for service of orders on Plaintiff. (Docket Entry 5; Docket Entry dated June 8, 2009.)[1] It appears from the records of the North Carolina Department of Correction that Plaintiff's change of location occurred because, on March 23, 2009, he was convicted in Alamance County, North Carolina, of robbery with a dangerous weapon and assault with a deadly weapon inflicting serious injury and received a total prison sentence of approximately 12 years and six months. See http://www.doc.state.nc.us/offenders ("Offender Information - Public Search" for Jose A. Morales, DOC Number 0917238, last performed Aug. 4, 2010). In another communication docketed by the Court on June 22, 2009, Plaintiff stated that he had been moved to Lanesboro Correctional Institution in Polkton, North Carolina, and the Court thereafter began using that address for service of orders on Plaintiff. (Docket Entry 7; Docket Entry dated Aug. 5, 2009.)

On January 19, 2010, Defendants filed their answer in which they denied Plaintiff's material factual allegations and asserted various defenses, including qualified immunity and the bar to relief in Heck v. Humphrey, 512 U.S. 477 (1994). (Docket Entry 13 at 1-2.) On February 17, 2010, Plaintiff sent what he described as

---

[1] On the envelope bearing that communication, Plaintiff listed below his name the number 0917238.

-3-

a "letter" to the Court in which he requested to "have a court appointed lawyer to represent [him] on [the instant matter] . . . [because] [he] ha[s] no money to obtain one . . . [and he wanted] a lawyer to lead [him] through this matter." (Docket Entry 15 at 1.) On a separate page, Plaintiff stated: "I want to file a motion for 'Amend Complaint.' I don't know if there is any paperwork that I have to fill out. If there isn't any paperwork to fill out, to add more defendants on this case, I would like to know how I go about by [sic] adding more defendants to this case." (Id. at 2.)

On February 19, 2010, this case was referred to the undersigned United States Magistrate Judge for the establishment of a schedule. (See Docket Entry dated Feb. 19, 2010.) By order dated February 22, 2010, the Court placed the case on the Standard discovery track with a completion date of June 22, 2010, any amended pleadings or addition of parties due by March 22, 2010, and a dispositive motion(s) deadline of July 22, 2010. (Docket Entry 16.) On February 24, 2010, Defendants filed a motion for disclosure of a report by the North Carolina State Bureau of Investigation ("the SBI") on the grounds that "[t]his matter arises out of the shooting of [Plaintiff] on January 10, 2008 in Burlington, North Carolina," that the SBI investigated said shooting and prepared a report thereon, and that the SBI has consented to the release of that report subject to a statutorily-required court order and other agreed conditions as to its

handling.  (Docket Entry 17 at 1-2.)  That same day, Defendants also sought leave to depose Plaintiff.  (Docket Entry 18.)[2]

By operation of Rule 6(a) and (d) of the Federal Rules of Civil Procedure and this Court's Local Rule 7.3(f), Plaintiff had until March 22, 2010, to respond to Defendants' motions.  On March 23, 2010, the Court docketed a Motion for an Extension of Time, which bore a certificate of service stating that Plaintiff placed said filing in the outgoing mail at Lanesboro Correctional Institution on March 20, 2010, for delivery to the Court and Defendants' counsel.  (Docket Entry 20 at 3.)  In said motion, Plaintiff sought more time to respond to Defendants' motions regarding the SBI report and his deposition on the grounds that he lacked experience with legal matters and "ha[d] been overwhelmed with a deluge of legal documents by Defendants' attorney(s)."  (Id. at 1-2.)[3]  Defendants did not file a response.  (See Docket Entries from Mar. 23, 2010, through July 21, 2010.)

On April 13, 2010, Defendants moved to compel Plaintiff to respond to written discovery requests served upon him on February 24, 2010.  (Docket Entry 22 at 1.)  Defendants attached to their

---

[2] Defendants served the foregoing motions on Plaintiff by mailing them to the address at Lanesboro Correctional Institution which Plaintiff expressly had identified to the Court as his.  (Docket Entry 17 at 4; Docket Entry 18 at 3.)

[3] Plaintiff also sought more time to file a reply to Defendants' response in opposition to Plaintiff's earlier letter asking for appointment of counsel. (Docket Entry 20 at 1.)  Because Plaintiff filed further motions for appointment of counsel after the date of his foregoing request for an extension of time (wherein he had the option of including any arguments he would have addressed in a reply), the Court deems this aspect of Plaintiff's extension motion moot.

filing copies of the discovery at issue and correspondence dated April 6, 2010, advising him that the due date for his responses had passed and that they would file a motion to compel if he did not respond to the discovery requests by April 12, 2010. (Id. at Exs. A, B.)[4] Plaintiff has not filed a response to Defendants' motion to compel or sought an extension of time to respond. (See Docket Entries from Apr. 13, 2010, through July 21, 2010.)

On April 21, 2010, Plaintiff filed another motion for appointed counsel, again citing his lack of funds to hire an attorney and stating:

> Plaintiff's imprisonment will greatly limit his ability to litigate. The issues involved in this case are complex, and will require significant research and investigation. Plaintiff has limited access to the law library an [sic] limited knowledge of the law.
>
> A trial in this case will likely involve conflicting testimony, and counsel would better enable plaintiff to present evidence and cross examine witness [sic].
>
> Plaintiff only went to eight [sic] grade in school and speaks English fair from what he learned hear [sic] in prison, Plaintiff can't read English nor understand English writting [sic]. Plaintiff is ignorant of law or about how to go about this case or action.

(Id. at 1-2.) Plaintiff did not include a certificate of service as he had on his last filing, but the signature page of and envelope bearing said document reflected a different address for

---

[4] The motion to compel, letter, and discovery requests all were directed to Plaintiff at Lanesboro Correctional Institution (the address he expressly had identified to the Court as that which the Court should use to communicate with him). (See Docket Entry 22 at 3, Ex. A, p. 36, and Ex. B, p. 1.)

Plaintiff (at Warren Correctional Institution in Manson, North Carolina). (Id. at 2, Attach. 1.)[5]

On May 21, 2010, Defendants sought an extension of the discovery period because of the pendency of their various discovery-related motions. (Docket Entry 25.) The certificate of service reflects that said motion was mailed to Plaintiff at Lanesboro Correctional Institution, the last address Plaintiff expressly had identified as that through which the Court should contact him. (Id. at 3.) Plaintiff did not respond to that motion (see Docket Entries from May 21, 2010, through July 21, 2010), but did file another motion seeking appointment of counsel on June 8, 2010 (Docket Entry 26). Said motion expressly declared what had been implicit (given the statements about Plaintiff's understanding of English) in Plaintiff's last motion, i.e., that other persons (specifically, a fellow inmate named Billy Ray Locklear and another unidentified inmate) had been drafting Plaintiff's court filings. (Id. at 1-2.)[6] According to the motion, the Court should appoint

---

[5] Unlike with his prior transfers, the record reflects no communications from Plaintiff advising the Court of any address change (see Docket Entries from Mar. 23, 2010, through July 21, 2010); however, Department of Correction records reflect that Plaintiff was transferred from Lanesboro Correctional Institution to Warren Correctional Institution on March 30, 2010, see http://www.doc.state.nc.us/offenders ("Offender Information - Public Search" for Jose A. Morales, DOC Number 0917238, last performed Aug. 4, 2010).

[6] Although the motion bears a signature in Mr. Locklear's name as well as that of Plaintiff, neither executed the document with a sworn verification and the Court has no other corroboration of the claims set forth in the motion. In addition, none of Plaintiff's requests for counsel indicate what, if any, efforts he or others (such as family members or friends) have done to attempt to secure representation, including by attorneys who work on a contingency fee basis.

-7-

counsel for Plaintiff because the Department of Correction forbids inmate-to-inmate legal assistance, Plaintiff is housed in a unit where inmates who previously have assisted him no longer can, Plaintiff has limited English skills, and Plaintiff may have suffered brain damage as a result of the shooting underlying his instant legal claim. (Id.)[7]

On July 19, 2010, Defendants moved for an extension of their deadline for filing dispositive motions based upon the pendency of discovery-related motions. (Docket Entry 29.)[8]

DISCUSSION

The Court first will address Plaintiff's requests for appointment of counsel (Docket Entries 15, 23 and 26). "[A] plaintiff does not have an absolute right to appointment of counsel." Miller v. Simmons, 814 F.2d 962, 966 (4th Cir. 1987). Instead, the provision of counsel through the auspices of the Court remains, "as [does] the privilege of proceeding in forma pauperis, a matter within the discretion of the District Court. It is a privilege and not a right." Bowman v. White, 388 F.2d 756, 761 (4th Cir. 1968). In delineating the scope of this discretion, the United States Court of Appeals for the Fourth Circuit has held that a litigant "must show that his case is one with exceptional

---

[7] Again, said filing contains no certificate of service, but otherwise indicates that it was sent to the Court from Warren Correctional Institution in Manson, North Carolina. (Docket Entry 26 at 2, Attach. 1.)

[8] The certificate of service reflects that said motion was mailed to Plaintiff at Lanesboro Correctional Institution, the last official address Plaintiff had provided to the Court. (Docket Entry 29 at 3.)

-8-

circumstances." Miller, 814 F.2d at 966 (citing Cook v. Bounds, 518 F.2d 779, 780 (4th Cir. 1975)).

"The question of whether such circumstances exist in any particular case hinges on characteristics of the claim and the litigant." Whisenant v. Yuam, 739 F.2d 160, 163 (4th Cir. 1984), abrogated in part on other grounds, Mallard v. United States Dist. Ct. for S.D. of Iowa, 490 U.S. 296 (1989).[9] More pointedly, "[i]f it is apparent to the district court that a pro se litigant has a colorable claim but lacks the capacity to present it, the district court should appoint counsel to assist him." Gordon v. Leeke, 574 F.2d 1147, 1153 (4th Cir. 1978). In this case, it is not "apparent" that Plaintiff has a colorable claim.

The Complaint in this case appears to assert a claim that Defendants used excessive force in detaining Plaintiff. The United States Supreme Court has "h[e]ld that *all* claims that law enforcement officers have used excessive force – deadly or not – in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and

---

[9] In Mallard, the United States Supreme Court ruled that a court could not make "compulsory assignments of attorneys in civil cases" pursuant to the provision in 28 U.S.C. § 1915 (then codified at subsection (d), now set out in subsection/paragraph (e)(1)) stating that a "'court may request an attorney to represent' an indigent litigant," Mallard, 490 U.S. at 300-01 (holding that the statute's use of the word "request" means that courts may ask, but may not command, attorneys to represent civil litigants). The Supreme Court also declined to "express an opinion on the question whether the federal courts possess inherent authority to require lawyers to serve." Id. at 310. Because this Court ultimately concludes that this case fails to present exceptional circumstances warranting judicial intervention to secure counsel for Plaintiff, no need exists to explore further how the Court might provide counsel in an appropriate case.

its 'reasonableness' standard . . . ." Graham v. Connor, 490 U.S. 386, 395 (1989) (emphasis in original). "[P]roper application [of this standard] requires careful attention to the facts and circumstances of each particular case, including the severity of the crime [as to which the plaintiff's detention was sought], whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Id. at 396. "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Id. Moreover, "[t]he calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation." Id. at 397. Given the objective nature of the "reasonableness" inquiry, even "[a]n officer's evil intentions will not make a Fourth Amendment violation out of an objectively reasonable use of force . . . ." Id.

In applying the foregoing standard, the Fourth Circuit has held that "[a] police officer may use deadly force 'when the officer has sound reason to believe that a suspect poses a threat of serious physical harm to the officer or others.'" Culosi v. Bullock, 596 F.3d 195, 201 (4th Cir. 2010) (quoting Elliott v. Leavitt, 99 F.3d 640, 642 (4th Cir. 1996)). Even "[a] mistaken use

of deadly force . . . is not necessarily a constitutional violation under the Fourth Amendment: 'a mistaken understanding of facts that is reasonable in the circumstances can render a seizure reasonable under the Fourth Amendment.'" Id. (quoting Milstead v. Kibler, 243 F.3d 157, 165 (4th Cir. 2001)). See also Maryland v. Garrison, 480 U.S. 79, 87 (1987) (reiterating "need to allow some latitude for honest mistakes that are made by officers in the dangerous and difficult process of making arrests"). Moreover, the Fourth Circuit has recognized that evidence that a plaintiff-suspect actually was unarmed at the time a defendant-officer used force often will have no relevance to an excessive force claim because the reasonableness inquiry requires scrutiny only of the facts reasonably perceived by the defendant-officer at the time. See Greenridge v. Ruffin, 927 F.2d 789, 792 (4th Cir. 1991) (citing with approval Sherrod v. Berry, 856 F.2d 802 (7th Cir. 1988)).

As a final matter, because Defendants have raised qualified immunity defenses, the Court also must determine whether, at the time of this incident, "it would [have] be[en] clear to a reasonable officer that [his] conduct was unlawful in the situation he confronted." Saucier v. Katz, 533 U.S. 194, 202 (2001). See also Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982) (ruling that government officials "are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known").

In light of the foregoing authority, the Court does not find it "apparent" that Plaintiff has a colorable claim. The facts alleged by Plaintiff (set out in their entirety above) indicate that he fled from law enforcement officers despite express orders to stop and that he continued to run for some period of time even after shots had been fired. Public records confirm that, following his apprehension, Plaintiff was convicted of extremely dangerous, violent offenses. Moreover, under controlling precedent: 1) Plaintiff's allegation that he was not armed at the time of his flight from law enforcement may well have no relevance to his instant claim; 2) Plaintiff cannot prevail even if Defendants mistakenly assessed the danger he posed if any such mistaken judgment was a reasonable product of the circumstances they confronted; and 3) any evaluation of the reasonableness of Defendants' actions must take into account the difficulty faced by law enforcement officers dealing with a fleeing suspect, particularly one facing serious criminal charges. Finally, under the qualified immunity doctrine, Defendants are not subject to damages unless clearly established authority from an analogous factual context already confirmed the illegality of their conduct.

Given these considerations, the Court will exercise its discretion to deny Plaintiff's requests for appointment of counsel (Docket Entries 15, 23 and 26). If a material change in these conditions develops at a later stage in the case (i.e., facts emerge that support an argument that Plaintiff has a colorable

claim), Plaintiff obviously may raise this issue again.  The Court will direct the Clerk to send Plaintiff copies of relevant portions of this Court's Local Rules and the Federal Rules of Civil Procedure to aid Plaintiff in meeting his obligations to conduct this litigation.  In this regard, the Court specifically cautions Plaintiff to comply with the service requirements of Rule 5 of the Federal Rules of Civil Procedure ("the Federal Rules").

In addition, in light of Plaintiff's comments regarding his interest in amending his Complaint and/or adding defendants (contained in a document he included with his first motion seeking appointed counsel, as set out above in the Background section), the Court directs Plaintiff's attention to the following rules:

1) Federal Rule 15(a)(2), which provides that, where, as here, a litigant proposes to amend a pleading (like a complaint) more than 21 days after serving that pleading, the litigant must obtain "written consent" of the opposing side or an order from the Court (which the Court should grant "when justice so requires");

2) Federal Rule 7(b), which requires a litigant to file a written motion to obtain a court order;

3) Local Rule 7.3(j), which permits a litigant to file a motion "to add parties" and "to amend the pleadings" without filing a supporting brief, but requires that the litigant's motion "state good cause" for the request and cite appropriate authority; and

4) Federal Rule 16(b), which requires a litigant to show "good cause" in order to add parties or to amend pleadings where, as

here, the deadline for such action set in a scheduling order has passed.

As to Defendants' motions for disclosure of the SBI report and for permission to depose Plaintiff (Docket Entries 17, 18), Plaintiff has filed an unopposed motion for extension of time to respond (Docket Entry 20). The Court will allow Plaintiff until August 20, 2010, to file any response regarding disclosure of the SBI report and/or the taking of his deposition. Defendants may file any reply thereto by August 31, 2010, after which the Court promptly will rule on Defendants' underlying motions.

Next, the Court will grant Defendants' motion to compel (Docket Entry 21). As detailed above in the Background section, the discovery at issue in the motion to compel was served upon Plaintiff at Lanesboro Correctional Institution long before he was transferred to Warren Correctional Institution. Plaintiff has offered no excuse for his failure to respond to those discovery requests. The Court will not sanction Plaintiff for his failure to respond to date, nor will the Court treat Plaintiff as having waived any otherwise valid objections he may have to Defendants' discovery requests. However, the Court will order that Plaintiff respond to Defendants' discovery requests by August 20, 2010. Any failure by Plaintiff to respond by that date may provide a basis for sanctions, including dismissal of this action. <u>See</u> Fed. R. Civ. P. 37(b)(2). The Court cautions Plaintiff that "an evasive or

incomplete . . . response must be treated as a failure to . . . respond." Fed. R. Civ. P. 37(a)(4).

Finally, because (through no fault of Defendants) discovery remains to be completed, the Court will grant Defendants' motions for an extension of the discovery period and of the deadline for filing dispositive motions.  The Court will set November 19, 2010, as the new date for the close of discovery and December 20, 2010, as the new deadline for the filing of dispositive motions.

**IT IS THEREFORE ORDERED** that Plaintiff's three motions for appointment of counsel (Docket Entries 15, 23 and 26) are **DENIED**. To assist Plaintiff in meeting his obligations to conduct this litigation, the Court directs the Clerk to send Plaintiff copies of the Civil Rules portion of this Court's Local Rules and Rules 5, 6, 7, 8, 9, 10, 11, 15, 16, 26, 30, 31, 33, 34, 35, 36, 37, 45, 56 and 72, as well as Forms 1 and 2, of the Federal Rules of Civil Procedure.  It appears (based on the address utilized by Plaintiff in making his most recent court filings and on the public records of the North Carolina Department of Correction) that Plaintiff has been transferred from Lanesboro Correctional Institution to Warren Correctional Institution; accordingly, the Court should serve this Order and the above-listed court rules to Plaintiff at Warren Correctional Institution, P.O. Box 399, Manson, NC 27553.  The Clerk also should update the docket to reflect that address for service of all documents on Plaintiff by the Court and Defendants. Plaintiff shall file a Notice of Address Change with the Court

(with service upon Defendants' counsel) in the event of any future changes of address.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for an Extension of Time (Docket Entry 20) is **GRANTED IN PART** and that Plaintiff may file any response to Defendants' Motion to Obtain SBI Report (Docket Entry 17) and Defendants' Motion to Depose Incarcerated Witness (Docket Entry 18) on or before August 20, 2010. Defendants shall file any reply thereto by August 31, 2010. The Court defers ruling on Defendants' motions regarding the SBI report and Plaintiff's deposition until after the above-allowed time for briefing has passed.

**IT IS FURTHER ORDERED** that Defendants' Motion to Compel (Docket Entry 21) is **GRANTED** and that Plaintiff shall respond to Defendants' discovery requests (served on February 24, 2010) on or before August 20, 2010. Plaintiff shall serve his responses directly upon Defendants' counsel and shall not file them with the Court.

**IT IS FURTHER ORDERED** that Defendants' Motion to Extend the Discovery Period (Docket Entry 25) and Defendants' Motion for Extension of Time to File Their Motion for Summary Judgment (Docket Entry 29) are **GRANTED**. The Court sets November 19, 2010, as the new date for the close of discovery and December 20, 2010, as the new deadline for the filing of dispositive motions.

                                     /s/ L. Patrick Auld
                                         **L. Patrick Auld**
                               **United States Magistrate Judge**
August 6, 2010