IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

JOSE ANTONIO MORALES,              )
                                   )
          Plaintiff,               )
                                   )
     v.                            )     1:09CV175
                                   )
JOHN CHARLES HOLLY and             )
CHARLES BRIAN ESTES,               )
                                   )
          Defendants.              )

**MEMORANDUM OPINION AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

The instant matter comes before the undersigned United States Magistrate Judge for a recommended ruling on Defendants' Motion for Sanctions Pursuant to Rule 37(b) (Docket Entry 32) and Defendants' Motion for Summary Judgment (Docket Entry 34). (See Docket Entry dated Feb. 10, 2011; see also Docket Entry dated Dec. 1, 2009 (assigning case to undersigned Magistrate Judge).)[1]  For the reasons that follow, the Court should grant Defendants' Motion for Summary Judgment and deny Defendants' Motion for Sanctions as moot.

BACKGROUND

The instant action arises out of Lee County Sheriff's Department Captain John Holly ("Holly") and Sergeant Charles Estes's ("Estes") alleged use of excessive force in the detention of Plaintiff. (See Docket Entry 2.) Plaintiff, proceeding pro se, originally filed a form Section 1983 Complaint against Holly and

---

[1] Because Defendants' Motion for Sanctions seeks dismissal of this action (see Docket Entry 32 at 1), the undersigned addresses it by way of Recommendation rather than Order.

Estes without indicating the specific constitutional violation at issue. (See id.) The entirety of the Complaint's factual allegations appears as follows:

> As soon as I exited the car through the window because my door wouldn't open I heard someone say dont [sic] you run you little motherfucker. I'm going to kill you but I ran away from Captain Holly unarmed. But he opened fire on me immediately. When I crossed the road behind the house I stopped running and put my hands up. Then I heard a loud boom and i [sic] was shot in my face. Sgt Estes also took blame for shooting me to [sic]. I heared [sic] a lot of gun shots whiles [sic] i [sic] was running. I have a lot more to say right now im [sic] briefly breakin [sic] this down[.]

(Id. at 3.)[2]

Defendants, in connection with their Motion for Summary Judgment, have filed affidavits attesting to the events preceding Plaintiff's injuries. (See Docket Entries 35-1, 35-2.) According to those affidavits, on the date in question, members of the Lee County Sheriff's Office met with members of the Alamance County Sheriff's Office in Burlington, North Carolina, to conduct a controlled narcotics purchase. (See Docket Entry 35-1, ¶ 5; Docket Entry 35-2, ¶ 5.) Narcotics agent Charles Dew of the Lee County Sheriff's office, acting undercover, was to purchase one kilogram of cocaine for $17,500. (Docket Entry 35-1, ¶ 5; Docket Entry 35-2, ¶ 5.)

Holly and Estes monitored the purchase from separate locations, with Holly stationed in a nearby parking lot listening to the operation by way of an audio surveillance feed from Dew

---

[2] Page citations refer to the pagination in the CM/ECF footer.

(Docket Entry 35-2, ¶¶ 5, 8) and Estes "stationed behind a church . . . receiving updates from a member of the Alamance County Sheriff's Office who was monitoring [that same audio surveillance feed]" (Docket Entry 35-1, ¶ 7). During the course of the purchase, Holly, by way of the surveillance, heard Dew "begin yelling and screaming." (Docket Entry 35-2, ¶ 9.) Holly then "heard a gunshot over the radio" (id.), at which point "Dew said he had been shot" (id. ¶ 10) and "[a]nother voice on the radio said that Dew had been robbed" (id.). Estes heard the officer who was monitoring the surveillance feed "indicate[] that something had gone wrong with the controlled buy" (Docket Entry 35-1, ¶ 8) and subsequently state "'officer shot'" (id). On this information, Holly and Estes both responded to the location of the incident. (See Docket Entry 35-1, ¶ 8; Docket Entry 35-2, ¶ 11.)

As Holly approached Dew's location, Holly "pulled [his] gun from [his] ankle holster." (Docket Entry 35-2, ¶ 11.) Holly averred that he "was concerned about the potential for additional gunfire from the individuals who shot Dew." (Id.) Upon arriving, Holly "saw two men running from where . . . Dew[] . . . was parked . . . towards a burgundy Chevrolet Lumina." (Id. ¶ 12.) Holly then saw Plaintiff "enter[] the Lumina through the driver's side door." (Id. ¶ 13.) Holly's vehicle boxed in the Lumina and "Plaintiff climbed out of the window [of the Lumina] and began to run[.]" (Id. ¶ 14.) Holly "repeatedly identified [himself] as a law enforcement officer and ordered [Plaintiff] to get on the ground," but Plaintiff continued to flee. (Id. ¶ 15.) "Suddenly,

-3-

[Plaintiff] stopped running . . . turned to his right and made a movement." (Id. ¶ 16.) According to Holly, that movement "caused [Holly] to believe that [Plaintiff] was pulling something out of his coat or waist band." (Id. ¶ 16.) Accordingly, asserting a "belie[f] that [Plaintiff] intended to cause severe bodily harm to [him] and the other law enforcement officers around [him][,] . . . [Holly] fired two shots at [Plaintiff]." (Id. ¶ 17.) Plaintiff "resumed running," ending up in the backyard of a nearby property by way of a gate in a chain link fence. (Id. ¶¶ 18-19.) Holly lost sight of Plaintiff at that point. (Id. ¶ 19.) He then "heard one or two more shots" and "observed [] Estes . . . with his weapon drawn." (Id. ¶ 20.) Holly then "saw the suspect lying between the building and the chain link fence." (Id. ¶ 21.)

As Estes arrived at the scene, he, like Holly, initially saw Plaintiff running "away from where the controlled buy took place." (Docket Entry 35-1, ¶ 9.) Estes then "got out [of his vehicle] and chased after [Plaintiff]." (Id. ¶ 10.) He "saw [] Holly . . . chasing after [Plaintiff]" (id. ¶ 11) and, "as [Plaintiff] continued to run away from the scene of the controlled buy, [Estes] saw [Plaintiff] stop and turn in [] Holly's direction" (id. ¶ 12). At this point, Estes "heard two gun shots," but, being unable to discern from where they originated, avers he "believed that the subject had just fired two additional shots in the direction of [] Holly." (Id.) Estes "continued to chase [Plaintiff]" and "drew [his] weapon from its holster." (Id. ¶ 14.) Despite yelling "'Stop, stop, put your hands up'" (id.), "[Plaintiff] continued to

-4-

Case 1:09-cv-00175-CCE-LPA   Document 45   Filed 09/28/12   Page 4 of 17

flee with his left hand tucked in his waist" (id.). Estes then "heard someone, who [he] believed to be [] Holly, yell, 'He's got a gun!'" (id.) and subsequently observed Plaintiff "abruptly stop[] running and turn[] towards [him] with his left arm still clutched as if he was holding something against his waist" (id. ¶ 17). According to Estes, he perceived Plaintiff's actions as a threat, and, "believ[ing] that [Plaintiff] had a gun and that [Plaintiff] intended to cause [him] serious bodily harm" (id. ¶ 18), Estes fired two shots at Plaintiff (id.).

As a result of the foregoing, Plaintiff pled guilty in state court to assault with a deadly weapon inflicting serious injury and to robbery with a dangerous weapon. (See Docket Entry 35-4 at 5.)[3] The factual showing made in connection with that plea revealed certain details regarding the events that led to Dew's shooting that Holly and Estes had not witnessed. Specifically, the transcript reflects that Plaintiff, along with another individual, approached Dew's vehicle under the guise of completing the drug sale. (Id. at 11.) However, Plaintiff and his accomplice never possessed the drugs at issue and intended solely to rob Dew. (See id. at 12-13.) Moreover, it appears that Plaintiff's accomplice fired the shot inflicting Dew's injury. (See id. at 11-12.)[4]

---

[3] "[A] knowing and voluntary guilty plea is an admission of all elements or material facts of the charge." United States v. One 1985 Mercedes Benz Automobile, 716 F. Supp. 211, 213 (E.D.N.C. 1989) (citing McCarthy v. United States, 394 U.S. 459, 466 (1969), and United States v. Bejar-Matrecios, 618 F.2d 81, 84 (9th Cir. 1980)).

[4] Although the factual showing in the state court transcript
(continued...)

-5-

Plaintiff's deposition testimony (filed by Defendants in connection with their Motion for Sanctions) corroborates many of the main points of the foregoing affidavit accounts. (See Docket Entry 33-2.) Although Plaintiff refused to answer any questions regarding his involvement in the narcotics transaction that led to Dew's shooting (see id.), Plaintiff acknowledged that as police officers arrived on the scene, he "was getting out of the window of the car" (id. at 24). He further admitted that he heard officers order that he not move, but that he "started to run" regardless. (Id. at 24-25.)[5] Further according to Plaintiff's deposition testimony, during the course of fleeing, he "got in the back [yard] of [a] house" when he "put [his] hands up and then [] started to get down just a little bit." (Id. at 29.) At that point, he

---

[4](...continued)
states that "[Plaintiff] shot [Dew] in the leg one time with a .22" (Docket Entry 35-4 at 12), it appears from the other facts noted that Plaintiff's accomplice shot Dew in the leg after urging from Plaintiff (see id. at 11-12). It further appears that the weapon then jammed and that the jammed weapon was found under the seat of Plaintiff's accomplice in the vehicle in which Plaintiff's accomplice was apprehended. (See id. at 12.) Moreover, in Plaintiff's deposition, he asserted that he did not fire the shot: "[T]he guys that were with me did shoot a policeman in the leg[.]" (Docket Entry 33-2 at 11.) Because on a motion for summary judgment the Court must construe all facts in the light most favorable to the non-moving party, see Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986), for the purposes of the instant Motion, the Court will construe the facts as if Plaintiff's accomplice, and not Plaintiff, actually fired the shot inflicting injury on Dew.

[5] Later in his deposition, Plaintiff states: "No, I never said that they said for me to stop. I said that when I got out, the policeman said don't run, you little motherfucker. I'm going to kill you. But I never said that he told me to stop." (See Docket Entry 33-2 at 45.) Even in a light most favorable to Plaintiff, the command "don't run" constitutes an order to stop.

"looked back [and] got shot in the face" (id.), but that "everything happened really quickly" (id.) and, accordingly, he cannot remember every detail (id.). When asked why he "didn't lay down on the ground" in compliance with officers' instructions, Plaintiff responded only: "This -- that's -- that's -- that's -- that's a good question, because -- well, tell him that, yeah, that's a good question." (Id. at 33.) In responding to separate inquiry regarding the details of the shot that inflicted his facial injury, Plaintiff noted again that he cannot recount the exact details because "everything happened so fast." (Id. at 42.)

Plaintiff, in connection with his own filings, has not offered any admissible evidence contradicting the substantive points of Defendants' accounts. As a Response to Defendants' instant summary judgment motion, Plaintiff filed only a four-page, hand-written statement that was neither sworn nor signed under penalty of perjury, recounting his perspective on the events leading to his injury. (See Docket Entry 37.)[6] "It is well established that unsworn, unauthenticated documents cannot be considered on a motion for summary judgment." Orsi v. Kirkwood, 999 F.2d 86, 92 (4th Cir. 1993); see also United States v. White, 366 F.3d 291, 300 (4th Cir. 2004) (emphasizing that unsworn argument does not constitute evidence). Perhaps realizing this deficiency, six months after

---

[6] "On summary judgment, unsworn declarations made under penalty of perjury that substantially conform to 28 U.S.C. § 1746 are admissible in lieu of sworn affidavits." Watterson v. Wilinson, No. 3:09-cv-394-RJC, 2012 WL 1067936, at *7 n.2 (W.D.N.C. Mar. 29, 2012) (unpublished) (citing LeBoeuf, Lamb, Greene & MacRae, L.L.P. v. Worsham, 185 F.3d 61, 65-66 (2d Cir. 1999)).

-7-

filing his Response, Plaintiff filed a "Reply Brief to Deny Support of Defendants' Motion for Summary Judgment," which seeks to have the Court consider all of Plaintiff's "previous unsigned and unsworn motions and papers" as "sworn statements made under oath and made under the the [sic] penalty of perjury." (Docket Entry 39 at 1.)

Even if the Court considered Plaintiff's Response as an affidavit or unsworn declaration made in compliance with 28 U.S.C. § 1746 (and therefore as evidence in opposition to Defendants' summary judgment motion), Plaintiff's account is consistent with the affidavits filed by Holly and Estes and with Plaintiff's previous deposition testimony. (Compare Docket Entries 35-1, 35-2, with Docket Entry 37.) Namely, Plaintiff states that he was "coming out the [sic] window" of the car when he heard an officer demand that he not run, but that he proceeded to run regardless. (Docket Entry 37 at 1.) Plaintiff further provides that he "ran down an alley and then crossed a street" when he approached a "house with a waist high chain-link fence" whereupon he "open[ed] the fence door and ran behind this house." (Id.) Plaintiff claims he then stopped and "put [his] hands up [while] ducking [his] head a little bit" and "looked over [his] shoulder without moving [his] body" at which time he "was shot in [his] face." (Id. at 2.)

In Plaintiff's only other filing with the Court addressing Defendants' Motion for Summary Judgment (which he made nearly a year after Defendants filed said Motion), Plaintiff attached a State Bureau of Investigation report ("SBI Report") that again only

-8-

reaffirms the main points of Defendants' accounts. (See Docket Entry 41 at 2-27.) The SBI Report itself contains information from interviews conducted with both Holly and Estes regarding their recollection of the events leading up to Plaintiff's injury. (Id.) In the filing of that Report that Plaintiff made with the Court, Plaintiff added hand-written notations along the margins. (Id.)

The recollection of events by Holly and Estes as outlined by the SBI Report again coheres with Defendants' affidavits filed in connection with their Motion for Summary Judgment. (Compare Docket Entry 41 at 2-27, with Docket Entries 35-1, 35-2.) Plaintiff's handwritten notations, besides being untimely, again are neither sworn nor signed under penalty of perjury, such that they would not constitute evidence appropriately before the Court, see, e.g., White, 366 F.3d at 300. In addition, said notations do not rebut the averments from Defendants, but rather present two arguments contesting the use of deadly force. First, Plaintiff stresses that he did not actually possess a weapon. (See Docket Entry 41 at 10 ("[Holly] didn't see [Plaintiff] with a weapon or reaching for a weapon but fired anyway."), 10 ("There were multiple police officers shooting without seeing a weapon."), 11 ("Why shoot to kill when there was no weapon[?]").) Second, Plaintiff highlights that he did not fully turn toward, or move in the direction of, Holly. (Docket Entry 41 at 9 ("[Plaintiff] do [sic] not run toward or turned [sic] toward Holly.").) The undersigned construes Plaintiff's position as maintaining, as he stated in his

-9-

deposition, that he "just kind of looked behind." (Docket Entry 33-2 at 31.)

MOTION FOR SUMMARY JUDGMENT

A. Standard

"The [C]ourt shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Such a genuine dispute exists if the evidence presented could lead a reasonable factfinder to return a verdict in favor of the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). In making this determination, the Court must view the evidence and any reasonable inferences therefrom in a light most favorable to the non-moving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

The party moving for summary judgment may discharge its burden by identifying an absence of evidence to support the non-moving party's case. See Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). The non-moving party then must "set forth specific facts showing that there is a *genuine issue for trial*." Matsushita Elec. Indus., 475 U.S. at 586–87 (citation omitted) (emphasis in original). In this regard, the non-moving party must convince the Court that evidence exists upon which a finder of fact could properly return a verdict in favor of the non-moving party. Anderson, 477 U.S. at 252 (citation omitted); see also Francis v. Booz, Allen & Hamilton, Inc., 452 F.3d 299, 308 (4th Cir. 2006) ("Mere unsupported speculation is not sufficient to defeat a

-10-

summary judgment motion if the undisputed evidence indicates that the other party should win as a matter of law.").

The United States Supreme Court has "h[e]ld that all claims that law enforcement officers have used excessive force – deadly or not – in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard . . . ." Graham v. Connor, 490 U.S. 386, 395 (1989) (emphasis in original). "[P]roper application [of this standard] requires careful attention to the facts and circumstances of each particular case, including the severity of the crime [as to which the plaintiff's detention was sought], whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Id. at 396. "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Id. Moreover, "[t]he calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation." Id. at 396-97. Given the objective nature of the "reasonableness" inquiry, even "[a]n officer's evil intentions will not make a Fourth Amendment violation out of an objectively reasonable use of force . . . ." Id. at 397.

-11-

In applying the foregoing standard, the Fourth Circuit has held that "[a] police officer may use deadly force 'when the officer has sound reason to believe that a suspect poses a threat of serious physical harm to the officer or others.'" Culosi v. Bullock, 596 F.3d 195, 201 (4th Cir. 2010) (quoting Elliott v. Leavitt, 99 F.3d 640, 642 (4th Cir. 1996)). Even "[a] mistaken use of deadly force . . . is not necessarily a constitutional violation under the Fourth Amendment: 'a mistaken understanding of facts that is reasonable in the circumstances can render a seizure reasonable under the Fourth Amendment.'" Id. (quoting Milstead v. Kibler, 243 F.3d 157, 165 (4th Cir. 2001)); see also Maryland v. Garrison, 480 U.S. 79, 87 (1987) (reiterating "need to allow some latitude for honest mistakes that are made by officers in the dangerous and difficult process of making arrests"). Moreover, the Fourth Circuit has recognized that evidence that a plaintiff-suspect actually was unarmed at the time a defendant-officer used force often will have no relevance to an excessive force claim because the reasonableness inquiry requires scrutiny only of the facts reasonably perceived by the defendant-officer at the time. See Greenridge v. Ruffin, 927 F.2d 789, 792 (4th Cir. 1991) (citing with approval Sherrod v. Berry, 856 F.2d 802 (7th Cir. 1988)).

B. Discussion

Even giving Plaintiff every possible favorable inference and accepting his deficient and dilatory offerings as admissible evidence for the purposes of this Memorandum Opinion, but accepting Defendants' reasonable perception of the events at the time that

-12-

they occurred as required under the foregoing standard, the evidence before the Court reveals the following: Plaintiff was engaged in an armed robbery disguised as a drug sale. During the course of that robbery, Plaintiff's accomplice shot an undercover police officer. Holly and Estes, who had been monitoring the controlled drug purchase from nearby locations by way of radio surveillance, approached knowing only that an officer had been shot and that Plaintiff and/or his accomplice was therefore armed and dangerous. Upon Holly and Estes's arrival at the scene, rather than comply with commands to stop or to lie on the ground, Plaintiff, unarmed (though not to the knowledge of Holly or Estes) fled. Plaintiff, during this attempt to evade arrest, made some movement back toward officers. Holly and Estes separately shot Plaintiff, causing the injuries of which Plaintiff now complains.

In this case, "careful attention to the facts and circumstances . . ., including the severity of the crime [as to which Plaintiff's detention was sought], whether the [Plaintiff][] pose[d] an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight," Graham, 490 U.S. at 396, reveals that no genuine issue of material fact exists and that Defendants are entitled to judgment as a matter of law. First, Defendants sought to detain Plaintiff for very serious crimes in that Plaintiff participated in a drug-related armed robbery that involved the shooting of an undercover police officer. See, e.g., Gannaway v. Karetas, 438 Fed. App'x 61, 66 (3d Cir. 2011) (describing armed

-13-

robbery as severe in context of Fourth Amendment claim); Crenshaw v. Lister, 556 F.3d 1283, 1292 (11th Cir. 2009) (same); Law v. City of Post Falls, 772 F. Supp. 2d 1283, 1296-97 (D. Idaho 2011) (recognizing that aggravated assault involving a deadly weapon "should be viewed as severe under the Graham factors"); Johnson v. Grob, 928 F. Supp. 889, 904 (W.D. Mo. 1996) ("[The plaintiff] was wanted for aggravated assault and armed criminal action, both severe crimes [for purposes of excessive force analysis] . . . .").

Second, Holly and Estes had a reasonable basis to believe that Plaintiff posed an immediate threat to the safety of the officers and others. Another officer had just been shot. Holly and Estes reasonably could treat anyone involved in that incident as armed and willing to shoot. That Plaintiff, in the end, did not actually possess a weapon is immaterial because, as noted, the inquiry required of the Court looks to the facts reasonably perceived by the defendant-officer at the time of the events in question. See Greenridge, 927 F.2d at 792 (citing with approval Sherrod, 856 F.2d 802).

Finally, Plaintiff was actively attempting to evade arrest, thereby exacerbating the uncertainty of an already combustible situation. Again, disputes as to whether Plaintiff was unarmed and/or fully turned toward Holly and Estes do not create a genuine issue of material fact on this issue. See Sigman v. Town of Chapel Hill, 161 F.3d 782, 788 (4th Cir. 1998) ("[A] police officer need not, in all circumstances, actually detect the presence of an object in a suspect's hands before firing on him." (internal

quotation marks omitted)). The applicable standard recognizes that "police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation." Graham, 490 U.S. at 397. As Plaintiff himself noted in his deposition, "everything happened really quickly." (Docket Entry 33-2 at 29.)

In sum, all of the relevant facts (even taken in the light most favorable to Plaintiff) establish as a matter of law that Defendants acted reasonably in using deadly force in this case. The Court therefore should enter summary judgment for Defendants.[7]

## MOTION FOR SANCTIONS

Defendants also have filed a Motion for Sanctions through which they contend that the Court should dismiss the instant action pursuant to Rule 37 of the Federal Rules of Civil Procedure as a sanction for Plaintiff's failure to comply with a directive of the Court and for his failure to comply with his discovery obligations generally. (See Docket Entry 33 at 2-6.) Defendants' sanctions motion appears to have merit in that Plaintiff failed to comply

---

[7] Defendants have also raised qualified immunity defenses, under which liability could attach only where "it would [have] be[en] clear to a reasonable officer that [his] conduct was unlawful in the situation he confronted." Saucier v. Katz, 533 U.S. 194, 202 (2001); see also Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982) (ruling that government officials "are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known"). Because Plaintiff has failed to establish a genuine issue of material fact as to whether the actions taken by Holly and Estes amount to excessive force, the qualified immunity defenses also would warrant entry of summary judgment.

with this Court's Order directing Plaintiff to "respond to Defendants' discovery requests by August 20, 2010" (Docket Entry 30 at 14) and in that Plaintiff otherwise failed to respond to Defendants' Requests for Admissions or to cooperate in the taking of his deposition (see Docket Entry 33 at 2; Docket Entry 33-2).

Those deficiencies are sufficient to warrant dismissal of the instant action. See Ballard v. Carlson, 882 F.2d 93, 95-96 (4th Cir. 1989) (affirming dismissal of pro se action for failure to comply with court order); see also Hashemzadeh v. Belk, Inc., No. 5:10-CV-00330-BR, 2012 WL 641035, at *1 (E.D.N.C. Feb. 28, 2012) (unpublished) (dismissing pro se action for failure to serve discovery responses); Wood v. Wells Fargo Bank, N.A., C/A No. 3:10-3160-SVH, 2012 WL 601872, at *4 (D.S.C. Feb. 23, 2012) (unpublished) (dismissing pro se action pursuant to Rules 41 and 37 for failure to prosecute, failure to respond to discovery requests and failure to appear for deposition); Inabinet v. Tex-Cap Elec., Inc., Civil Action No. 3:10-89-JFA-JRM, 2011 WL 6965739, at *2 (D.S.C. Dec. 12, 2011) (unpublished) (same); Silvious v. RR Donnelley & Sons, Civil Action No. 5:10cv00116, 2011 WL 3846775, at *3 (W.D. Va. Aug. 29, 2011) (unpublished) (dismissing pro se action for failure to comply with court order to appear for deposition). However, given the absence of a genuine issue of material fact and Defendants' entitlement to judgment as a matter of law, see discussion supra pp. 12-15, the Court need not reach this issue.

CONCLUSION

Under the standard set by <u>Graham</u>, no genuine issue of material fact exists as to whether Defendants' use of force qualified as reasonable and, accordingly, the Court should enter judgment as a matter of law for Defendants. Given that conclusion, the Court need not decide Defendants' Motion for Sanctions.

**IT IS THEREFORE RECOMMENDED** that Defendants' Motion for Summary Judgment (Docket Entry 34) be granted and that judgment be entered in favor of Defendants.

**IT IS FURTHER RECOMMENDED** that Defendants' Motion for Sanctions Pursuant to Rule 37(b) (Docket Entry 32) be denied as moot.

                                            /s/ L. Patrick Auld
                                                 **L. Patrick Auld**
                                     **United States Magistrate Judge**

September 28, 2012